BERNARD S. GREENFIELD, SBN. 66017
BRIAN J. HANNON, SBN. 99750
McGRANE, GREENFIELD,
HANNON & HARRINGTON LLP
40 South Market Street, Second Floor
San Jose, California 95113
Telephone: (408) 995-5600

Attorneys for Defendants
J. A. CAMBECE LAW OFFICE, P.C., J. A. CAMBECE,
and CACV OF COLORADO, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CRAIG UYEDA, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>J. A. CAMBECE LAW OFFICE, P.C., J. A. CAMBECE and CACV OF COLORADO, LLC,<br><br>        Defendants. | Case No. C 04 04312 JW<br><br>Date:  Monday, April 4, 2005<br>Time:  9:00 A.M.<br>Judge:  James Ware<br>Place:  280 South First Street,<br>Courtroom 8, San Jose, CA |

**DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

[Fed. R. Civ. Proc. 12(b)(6)]

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

MCGRANE, GREENFIELD, HANNON & HARRINGTON LLP

40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113

TELEPHONE (408) 995-5600 FAX (408) 995-0308

# AMENDED NOTICE OF MOTION AND MOTION TO DISMISS

TO:   Plaintiff CRAIG UYEDA ("Plaintiff") and his attorneys of record:

PLEASE TAKE NOTICE that on Monday, April 4, 2005, at the hour of 9:00 a.m., in the United States District Court for the Northern District of California, 280 South First Street, Courtroom 8, San Jose, California 95113, Defendants J. A. CAMBECE LAW OFFICE, P.C., J. A. CAMBECE, and CACV OF COLORADO, LLC ("Defendants") will move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the "Second Amended Class Action Complaint" on the ground that Plaintiff has failed to state a claim upon which relief can be granted for the following reasons:

1.   Plaintiff lacks standing to sue or seek injunctive relief under the California Unfair Competition Law (Cal. Bus. & Prof. Code §17200 *et seq.*). Consequently, the Court must dismiss his Second Claim for Relief.

2.   Since Plaintiff lacks standing to sue or seek injunctive relief under the California Unfair Competition Law, he is not entitled to seek class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

3.   Defendants' conduct, as alleged in his Second Amended Class Action Complaint, was lawful and entirely within the bounds of the Federal Fair Debt Collection Practices Act (15 U.S.C. §1692 *et seq.*).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, and the pleadings and papers filed herein.

Dated: February 28, 2005          McGRANE, GREENFIELD,
                                   HANNON & HARRINGTON LLP


                                   By:_____/S/_____
                                        BRIAN J. HANNON
                                        Attorneys for Defendants
                                        J. A. CAMBECE LAW OFFICE, P.C., J. A.
                                        CAMBECE, and CACV OF COLORADO,
                                        LLC

# AMENDED MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3. LEGAL DISCUSSION AND ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. Plaintiff lacks standing to sue under the California Unfair Competition Law. Accordingly, the Court must dismiss his state law claim . . . . . . . . 6

        (1) Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        (2) The Court must decide whether under California law Proposition 64 applies retrospectively . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        (3) Under California law, Proposition 64 must be applied retrospectively . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B. Plaintiff's request for class certification under Rule 23(b)(2) must be denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C. Plaintiff's contention that Defendants created a "false sense of urgency" is without merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP

40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113

TELEPHONE (408) 995-5600 FAX (408) 995-0308

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bolin v. Sears Roebuck & Co.*
231 F. 3rd 970 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dukes v. Wal-Mart Stores, Inc.*
222 F.R.D. 137 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gammon v. GC Service L.P.*
162 F.R.D. 313 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Goldberg v. Winston & Morrone,* P.C.
1997 U.S. Dist. LEXIS 3521 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Delorean Motor Co.*
991 F. 2nd 1236, 124 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Leuthold v. Destination America, Inc.*
224 F.R.D. 462 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Molski v. Gleichc*
318 F. 3rd 937 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Riviera v. MAB Collections, Inc.*
682 F. Supp. 174 (W.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Taylor v. Cavalry Investment,* LLC
365 F. 3rd 572 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Terran v. Kaplan*
109 F. 3rd 1428 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Zinser v. Accufix Research Institute, Inc.*
253 F. 3rd 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

## STATE CASES

*Bank of the West v. Superior Court*
2 Cal. 4th 1254 (1992 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Benson v. Kwikset Corp.*
__ Cal. App. 4th __, 2005 Cal. App. LEXIS 208 (Feb. 9, 2005) . . . . . . . . . . . 1, 6, 9-13

*Bivens v. Corel Corp.*
__ Cal. App. 4th __, 2005 Cal.App. LEXIS 256 (Feb. 18, 2005) . . . . . . . . . . . . . . 9, 12

*Branick v. Downey Savings & Loan Ass'n*
__ Cal. App. 4th __, 2005 Cal.App. LEXIS 201 (Feb. 10, 2005) . . . . . . . . . . . . . . 9, 13

*Californians for Disability Rights v. Mervyn's, LLC*
__ Cal. App. 4th __, 2005 Cal.App. LEXIS 160 (Feb. 1, 2005) . . . . . . . . . . . . . 9, 12-13

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

*Evangelatos v. Superior Court*
44 Cal.3d 1188 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Governing Board of Rialto Unified School Dist. v. Mann*
18 Cal. 3rd 819 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Lytwyn v. Fry's Electronics, Inc.*
__ Cal. App. 4th __, 2005 Cal.App. LEXIS 267 (Feb. 22, 2005) . . . . . . . . . . . . . . . 9, 12

*Southern Service Co., Ltd. v. Los Angeles*
15 Cal. 2nd 1 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## FEDERAL STATUTES

15 U.S.C. §1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. §1692e(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. §1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

15 U.S.C. 1692g(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C. §1692k(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. Proc. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Fed. R. Civ. Proc. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 13-16, 20

Fed. R. Civ. Proc. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 9, 12

## STATE CONSTITUTION AND STATUTES

Cal. Const., art. II, §10, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Bus. & Prof. Code §17200 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Bus. & Prof. Code §17203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Bus. & Prof. Code §17204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Cal. Code of Civ. Proc. §382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cal. Gov. Code §9606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TREATISES

1 Moore, *et al*,
*Moore's Manual: Federal Practice and Procedure*, §3.40, p. 3-19 (2004) . . . . . . . . . . . . . 8

1 Moore, *et al*,
*Moore's Manual: Federal Practice and Procedure*, §3.43, p. 3-21 (2004) . . . . . . . . . . . . . 9

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

5 Moore, *et al.*,
*Moore's Federal Practice*, §23.43[3][d], p. 23-202 (3rd ed. 2004) . . . . . . . . . . . . . . . . . . 15

7A Wright, *et al.*,
*Federal Practice and Procedure*, §1775, p. 462 (2nd ed. 1986) . . . . . . . . . . . . . . . . . . 14-15

**MISCELLANEOUS**

*California Secretary of State Website*
Statement of the Vote: Statewide Measures Submitted to a Vote of Voters, pp. 43-45
<http://www.ss.ca.gov/elections/sov/
2004_general/formatted_ballot_measures_detail.pdf> . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California Secretary of State Website*
Voter Information Guide, Argument in Favor of Proposition 64, at p. 40
<http://www.voter-guide.ss.ca.gov/english.pdf> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California Secretary of State Website*
Voter Information Guide, Text of Proposed Laws, Sec. 1(b)(1), p. 109
<http://www.voterguide.ss.ca.gov/english.pdf> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California Secretary of State Website*
Voter Information Guide, Text of Proposed Laws, Sec. 1(e), p. 109
<http://www.voterguide.ss.ca.gov/english.pdf> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California Secretary of State Website*
Voter Information Guide, Text of Proposed Laws, Sec. 3, p. 109
<http://www.voterguide.ss.ca.gov/english.pdf> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California Secretary of State Website*
Voter Information Guide, Text of Proposed Laws, Sec. 5, p. 109-110
<http://www.voterguide.ss.ca.gov/english.pdf> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. Proc. 23
Advisory Committee's Note to 1966 Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

## 1.  **INTRODUCTION**.

Defendants J. A. CAMBECE, the J. A. CAMBECE LAW OFFICE, P.C., and CACV OF COLORADO, LLC are moving under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Second Amended Class Action Complaint filed by Plaintiff CRAIG UYEDA on the ground that he has failed to state a claim upon which relief may be granted.[1]

Plaintiff filed his original complaint on October 12, 2004.  In that complaint, Plaintiff alleged that Defendants had violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 *et seq.*) and the California Unfair Competition Law (Cal. Bus. & Prof. Code §17200 *et seq.*).[2]

Three weeks later, on November 2, 2004, the California electorate amended the Unfair Competition Law by overwhelmingly approving Proposition 64.  Under this ballot measure, a private plaintiff no longer has standing to sue or seek injunctive relief under the UCL unless he alleges and proves that he suffered "injury in fact" and that he lost "money or property" as a result of the defendant's unfair competition.[3]

On December 8, 2004 – after enactment of Proposition 64 – Plaintiff filed a First Amended Class Action Complaint, purportedly on behalf of himself and all others similarly situated, seeking class certification under both Rules 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Defendants filed a motion under Rule 12(b)(6) for an

---

[1]   For purposes of reference, hereafter, J.A. CAMBECE and the J. A. CAMBECE LAW OFFICE, P.C. are referred to collectively as the "Cambece firm" or "firm."  CACV OF COLORADO, LLC is referred to as "CACV"  Finally, the Cambece firm and CACV are referred to collectively as "Defendants."

[2]   The Fair Debt Collection Practices Act is referred to hereafter as the "FDCPA" or "Act." Unless otherwise indicated, all further statutory references are to the FDCPA.

The California Unfair Competition Law is sometimes referred to hereafter as the "UCL."

[3]   Proposition 64 was enacted, at least in part, to put an end to the "feeding frenzy" of "underemployed lawyers [who] create business for themselves by harassing California businesses on the basis of some *de minimis* putative nonconformance with some regulation or law."  *See Benson v. Kwikset Corp.*, __ Cal.App. 4th __, 2005 Cal. App. LEXIS 208 (Feb. 10, 2005) (Sills, P. J.) (concurring and dissenting), p. 26.

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

order dismissing that complaint on the ground that Plaintiff had failed to state a claim upon which relief may be granted.

While Defendants' motion was pending, Plaintiff filed his Second Amended Class Action Complaint ("Second Amended Complaint" or "SAC") at issue here. In this complaint, Plaintiff sets forth two claims for relief. First, he seeks an award of statutory damages for Defendants' alleged violations of the FDCPA. Second, he seeks to enjoin Defendants under the UCL from allegedly continuing to violate the Act.

In his second claim for relief, however, Plaintiff fails to allege that he suffered "any injury in fact" or that he "lost any money or property" as a result of Defendants' alleged violations of the FDCPA. Consequently, in light of Proposition 64, Plaintiff does not have standing to sue or seek injunctive relief under the UCL unless he can allege and prove that he suffered "injury in fact" and that he lost "money or property" as a result of Defendants' alleged violations of the Act. Since it is highly doubtful that Plaintiff can amend his complaint *truthfully* to allege such facts, the Court must dismiss his second claim for relief. Moreover, since he no longer has standing to sue or seek injunctive relief under the UCL, he no longer is entitled to seek class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Finally, in his first claim for relief, Plaintiff alleges, "on information and belief," that Defendants committed some unspecified violation of the FDCPA by creating a "false sense of urgency." As discussed below, Defendants' alleged conduct does not amount to a violation of the Act. Hence these allegations should be stricken from the Second Amended Complaint.

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

2.   **STATEMENT OF FACTS**.

In his Second Amended Complaint, Plaintiff alleges the following "facts":[4]

Plaintiff was indebted to Direct Merchants in the amount of $5,497.04. SAC, ¶12.[5] When Plaintiff failed to pay the debt, CACV purchased his debt "for pennies on the dollar." *Id.*, ¶¶13-14.[6] CACV then retained the Cambece firm to collect the debt. *Id.*, ¶14.

In 2003, Defendants sent Plaintiff an initial "demand" letter seeking payment of his debt. SAC, ¶16. Apparently, Plaintiff ignored this letter, because Defendants sent him several followup letters stating that he had ignored the previous letters and requesting again that he contact the Cambece firm. *Id.*, ¶¶17-18, 22, 24-26. Apparently, Plaintiff ignored these letters as well. *Id.*, ¶¶17-18, 24-25. By ignoring the initial demand letter, Defendants were entitled, under the FDCPA, to assume that Plaintiff did not dispute the validity of the debt and that the debt was valid, at least until Plaintiff told them differently.[7]

It is important to point out that Plaintiff does *not* allege that Defendants violated the FDCPA by sending him *the initial demand letter*. Instead, Plaintiff alleges, they violated the Act by sending him *the followup letters*. SAC, ¶20, 23, 27-28, 32. In fact, Plaintiff alleges, by sending these followup letters, Defendants "acted in *an abusive and deceptive manner* contrary to the standards by others in the industry, *and contrary to those followed by civilized societies*." *Id.*, ¶15 (emphasis added).

---

[4]   In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations of the complaint as well as any reasonable inferences to be drawn therefrom. The court need not accept as true, however, conclusory allegations or legal characterizations. *See generally In re Delorean Motor Co.*, 991 F. 2nd 1236, 124 (6th Cir. 1993).

[5]   *See also* Joint Case Management Conference Statement (Feb. 8, 2005) at ("Plaintiff admits that he was indebted to Direct Merchants in the amount of $5,497.04").

[6]   Ultimately, in October 2004, Plaintiff filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. He received a discharge in January 2005. *See* Case Docket Report for *In re Craig Yoshiro Uyeda* (U.S. Bankr. Ct. N.D. Calif.) Case No. 04-56339. A copy of the Case Docket Report is attached hereto as Exhibit "2." Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants request the Court to take judicial notice of the Case Docket Report and the facts referred to therein.

[7]   *See generally* 15 U.S.C. 1692g. While a debt collector is entitled to assume that the debt is valid if the debtor does not dispute it, the failure of the debtor to dispute the debt does not constitute an admission of liability. 15 U.S.C. 1692g(c).

Since these follow-up letters are so "abusive" and "deceptive" and contrary to the "standards followed by a civilized society" (or so Plaintiff alleges), we think it is important to set out the full text of these letters so that the Court may evaluate for itself whether the letters are, indeed, contrary to such standards. Plaintiff alleges that the first followup letter was sent on July 9, 2003. This letter states:[8]

> As you know from our first letter, we represent the above names, CACV of Colorado, LLC. If you continue to ignore this matter, we may have no option but to recommend to our client that it exhaust whatever legal measures are available to collect this debt through local counsel in your state. We regret having to take this step but your failure to pay this bill has left us essentially with no other option.
>
> Please call our office immediately. The toll free number is 1-800-577-2230.
>
> As required by law, you are hereby notified that this firm's client may submit a negative credit report reflecting on your credit record to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

SAC, ¶15. As mentioned above, apparently, Plaintiff ignored this letter because Defendants ended up sending three identical followup letters asking Plaintiff to call the Cambece firm These letters were sent on August 27, 2003, October 24, 2003, and February 26, 2004. *Id.*, ¶¶17, 24-26.[9]

Plaintiff then alleges that the Cambece firm sent him a final letter on September 8, 2004 stating:

> As you know from our first letter, we represent CACV of Colorado, LLC.
>
> After further review of your account our client has decided to approve you for a temporary minimum monthly payment arrangement. Hopefully, this arrangement will give you the time you need temporarily to pay the above referenced account on a monthly basis. Our client hopes this will help you get back on our feet again.

---

[8] Plaintiff does not attach copies of the letters to his Second Amended Complaint. He only quotes from them.

[9] Any claim based on the letters dated July 9, 2003 and August 27, 2003 is barred by the one-year statute of limitations as set forth in 15 U.S.C. §1692k(d).

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

1   This offer may expire soon.  Please contact this office
2   immediately to make arrangement for your first monthly
    installment payment.

3   SAC, ¶28.

4   Plaintiff contends that all these followup letters violate the FDCPA in several

5   respects.  First, he alleges, "on information and belief," Defendants violated the FDCPA

6   because Mr. Cambece was not "meaningfully involved" in reviewing Plaintiff's file before

7   sending the letters, allegedly in violation of Section 1692e(3) of the Act.  SAC, ¶¶20, 35.

8   CACV is liable for the acts of the Cambece firm, Plaintiff alleges,  because it allegedly knew

9   of and approved such acts.  *Id*., ¶14.

10   Second, Plaintiff alleges, "on information and belief," Defendants violated the

11  FDCPA by threatening to take action that they had no intention of taking, allegedly in

12  violation of some unspecified provision of the Act.  SAC, ¶27.  In particular, Plaintiff alleges,

13  again "on information and belief," Defendants did not intend to submit a negative credit

14  report concerning Plaintiff to any credit reporting agency.  *Id*., ¶31.  In fact, Plaintiff alleges,

15  again on "information and belief," CACV never "actually report debts [to credit reporting

16  agencies]."  *Id*., ¶23.

17   Third, Plaintiff alleges, Defendants' use of the terms "exhaust whatever legal measures

18  are available to collect this debt," "no other option," and "immediately," combined with a

19  threat to report the debt, created a "false sense of urgency," allegedly in violation of some

20  unspecified provision of the Act.

21   Plaintiff seeks to certify this suit as a class action.  Plaintiff defines the purported

22  classes as follows:

23   Class One is defined as (i) all persons who were sent at an
    address in Santa Clara County, (ii) a letter from Defendants
24   concluding with a facsimile signature above the title "Attorney
    at Law," (iii) regarding an alleged debt which, according to the
25   records of the defendant or its subscriber, was incurred for
    personal, family, or household purposes.  Class One (the
26   "FDCPA class") includes the one (1) year period to the filing of
    the complaint.

27

28

Class Two is defined as (i) all persons who were sent at an address in California, (ii) a letter from Defendants concluding with a facsimile signature above the title "Attorney at Law," (iii) regarding an alleged debt which, according to the records of the defendant or its subscriber, was incurred for personal, family, or household purposes. Class Two (the "CUBPA class") includes the four (4) year period prior to the filing of the complaint.

SAC, ¶¶36-37.[10]

Plaintiff seeks to recover statutory damages for Defendants' alleged violations of the FDCPA. *See* SAC, Prayer, ¶C. He also seeks to enjoin the law firm from committing any further violation of the UCL. *Id.*, ¶¶1, 51, Prayer, ¶B. Finally, he seeks to recover his reasonable attorney's fees and costs. *Id.*, Prayer, ¶D.

### 3. **LEGAL DISCUSSION AND ANALYSIS**.

### A. **Plaintiff lacks standing to sue under the Unfair Competition Law. Accordingly, the Court must dismiss his state law claim.**

### (1) **Introduction.**

Prior to the enactment of Proposition 64, the Unfair Competition Law had been under siege for years. Some critics charged that the law had degenerated into "nothing but a feeding frenzy for attorneys," who wielded the statute like a club to "shake down" California businesses and that the law really was just "a way for underemployed lawyers to *create* business for themselves by harassing California businesses on the basis of some *de minimis* putative nonconformance with some regulation or law."[11] Others charged

---

[10]  Apparently, the so-called "CUBPA Class" is comprised of those class members who are seeking injunctive relief under what Plaintiff mistakenly refers to as the "*California Unfair Business Practices Act*." In point of fact, this legislation is generally referred to as the "California Unfair Competition Law." Defendants concede, however, that the acronym "CUBPA" has a more pleasing ring to it than "CUCL."

[11]  *See Benson v. Kwikset Corp.*, __ Cal.App. 4th __, 2005 Cal. App. LEXIS 208 (Feb. 10, 2005) (Sills, P. J.) (concurring and dissenting) (emphasis in original), p. 26. A copy of this decision is attached hereto as Exhibit "1."

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

that the measure was necessary to stop the filing of "frivolous shakedown" lawsuits under the UCL, especially since "most of the time, the lawyers or their front groups keep all the money."[12]

On November 2, 2004, the California electorate overwhelmingly approved Proposition 64.[13] In approving the measure, the voters specifically found that the UCL was being "misused" by some attorneys who were filing "frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit."[14] Therefore, they declared, it was the intent of the People of California to bar such attorneys from filing lawsuits for unfair competition in cases where their clients had not sustained any injury in fact.[15] The measure became effective November 3, 2004.[16]

Under Proposition 64, California Business and Professions Code Section 17204 was amended to state that any action under the UCL may be prosecuted by any private plaintiff, *but only* if he or she has "suffered injury in fact and has lost money or property as a result of such unfair competition."[17] In addition, Section 17203 was amended to require any private

---

[12] *See* California Secretary of State Website, Voter Information Guide, Argument in Favor of Proposition 64, at p. 40 <http://www. voter-guide.ss.ca.gov/english.pdf> (accessed Feb. 3, 2005). A copy of this document is attached hereto as Exhibit "3." Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants request the Court to take judicial notice of the information contained in this exhibit.

[13] California voters voted almost 2-to-1 in favor of Proposition 64. In fact, Proposition 64 passed in every county except the more liberal counties (e.g., Santa Cruz, San Francisco, Marin, and Alameda counties.) *See* California Secretary of State Website, Statement of the Vote: Statewide Measures Submitted to a Vote of Voters, pp. 43-45 <http://www.ss.ca.gov/elections/sov/2004_general/formatted_ballot_measures_detail.pdf> (accessed Feb. 3, 2005). A copy of this document is attached hereto as Exhibit "4." Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants request the Court to take judicial notice of the information contained in this exhibit.

[14] *See* California Secretary of State Website, Voter Information Guide, Text of Proposed Laws, Sec. 1(b)(1), p. 109 <http://www.voterguide.ss.ca.gov/english.pdf> (accessed Feb. 3, 2005). A copy of this document is attached hereto as Exhibit "5." Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants request the Court to take judicial notice of the information contained in this exhibit.

[15] *Id*., Sec. 1(e), p. 109 (Exh. "5").

[16] Cal. Const., art. II, §10, subd. (a).

[17] *See* California Secretary of State Website, Voter Information Guide, Text of Proposed Laws, Sec. 3, p. 109 (Exh. "5").

---

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

1    plaintiff who is suing on behalf of a class not only to meet the "standing requirements" of

2    Section 17204, but also to comply with the requirements for pursuing a class action under

3    California Code of Civil Procedure Section 382. Finally, Section 17204 was amended to

4    state that any action for injunctive relief under the law may be prosecuted by a private

5    plaintiff, *but only* if he or she has "has suffered injury in fact and has lost money or property

6    as a result [of such unfair competition]."[18]

7        Plaintiff does not allege that he suffered "any injury in fact" or that he lost "any

8    money or property" as a result of Defendants' alleged violation of the FDCPA. Therefore,

9    unless Proposition 64 applies only *prospectively* to cases filed after the measure became

10   effective, Plaintiff no longer has standing to sue or seek injunctive relief under the UCL.

11   But, as discussed below, under California law, it is beyond dispute that Proposition 64

12   applies *retrospectively* to all cases that were not final before the measure became effective.

13   Accordingly, the Court must dismiss Plaintiff's second claim for relief.

        (2)    **The Court must decide whether under California law**
               **Proposition 64 applies retrospectively.**

16       When the substantive law of a state applies in a federal case, the

17   federal court must determine what that law is.[19] This determination is made by considering

18   any applicable statute and the decisions of the state's highest court. If the state's highest

19   court has not ruled on the issue, "the federal court must conscientiously determine how that

20   court would decide the issue before it, looking to the sources of law, including intermediate

21   appellate court decisions of that state, that the state's highest court would look to for

22   persuasive authority."[20] "In particular, an intermediate appellate state court's decision is

23   datum for ascertaining state law which should not be disregarded by the federal court unless

24   it is convinced by other persuasive data that the highest court of the state would decide

---

18   *Id.*, Sec. 5, pp. 109-110 (Exh. "5").

19   *See generally* 1 Moore, *et al, Moore's Manual: Federal Practice and Procedure,* §3.40, p. 3-19 (2004).

20   *Id.*, §3.40, p. 3-20.

otherwise." However, even though the federal court should consider the state intermediate appellate court's decision, it "is not absolutely bound by it."[21] If the state intermediate appellate court decisions are in conflict, "the federal court must determine which approach the highest court would likely adopt."[22]

In this case, the California Supreme Court has not decided whether Proposition 64 applies retrospectively, although all their previous decisions, some dating back as far as the late 19th century, strongly suggest that the Court ultimately will decide that the measure does apply retrospectively. In any event, five different appellate panels of the California Court of Appeals, the state's intermediate appellate court, have addressed the issue. After an exhaustive analysis of existing statutory law and the California Supreme Court's prior decisions, four of these courts concluded that Proposition 64 applies retrospectively.[23] Only one of these courts concluded that the measure does not be apply retrospectively.[24] But, as the other courts point out, this court's decision not only is "unpersuasive," but also would lead to an "absurd" result.

---

[21] *Id.*, §3.43, p. 3-21.

[22] *Id.*

[23] *See Benson v. Kwikset Corp.*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 208 (Feb. 10, 2005) (Proposition 64 should be applied retrospectively); *Branick v. Downey Sav. & Loan Ass'n*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 201 (Feb. 9, 2005) (Proposition 64 should be applied retrospectively); *Bivens v. Corel Corp.*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 256 (Feb. 18, 2005) (Proposition 64 should be applied retrospectively); *Lytwyn v. Fry's Electronics, Inc.*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 267 (Feb. 22, 2005) (Proposition 64 should be applied retrospectively).

For the Court's convenience, we attach hereto as Exhibits "1," "6," "8," and "9," respectively, copies of these courts' decisions.

[24] *See Californians for Disability Rights v. Mervyn's, LLC*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 160 (Feb. 1, 2005) (Proposition 64 should not be applied retrospectively). For the Court's convenience, we attach hereto as Exhibit "7" a copy of this court's decision.

---

**(3)** **Under California law, Proposition 64 must be applied retrospectively.**

In *Benson v. Kwikset Corp.*, the plaintiff filed a class action suit against the defendant, a manufacturer of doorknobs and deadbolts, under the UCL. Plaintiff charged that the defendant had engaged in an unfair business practice by advertising that its products were "Made in the U.S.A.," when, in fact, a single screw or pin used in the products had been manufactured in Taiwan. The trial court entered judgment in favor of the plaintiff and enjoined the defendant from advertising that its products were "Made in the U.S.A." The court also awarded the plaintiff's attorneys $3 Million in statutorily authorized fees and costs. The defendant appealed.

Initially, the California Fourth District Court of Appeal affirmed the judgment of the lower court. But it then granted a rehearing concerning the award of certain costs. In the meantime, while the rehearing was pending, the California electorate approved Proposition 64. Defendant then filed a motion seeking to vacate the lower court's judgment and enter an order dismissing the action on the ground that the plaintiff no longer had any standing under the UCL to maintain the action. The court of appeal agreed and vacated the judgment.

The court first acknowledged that the general rule in California is that "'in the absence of a clear legislative intent to the contrary statutory enactments apply prospectively.'"[25] But, the court pointed out, the general rule does not apply if the pending action rests solely on a statutory basis and no rights have vested under the statute. In such case, unless the statute contains a "saving clause," the so-called "statutory repeal principle" applies, "terminat[ing] all pending actions based thereon.' [Citation]"[26] "'The justification

---

[25] *See Benson v. Kwikset Corp.*, Cal. App. 4th __, 2005 Cal. App. LEXIS 208 (Feb. 10, 2005), (Exh. "1") at pp. 12-13, quoting from *Evangelatos v. Superior Court*, 44 Cal. 3rd 1188, 1193-1194 (1988). The court also pointed out that this general rule also applies to statutory amendments resulting from the electorate's approval of a ballot measure. *Id.* at 12.

[26] *Id.*, (Exh. "1") at p. 13, quoting from *Governing Board of Rialto Unified School Dist. v. Mann*, 18 Cal. 3rd 819, 829 (1977). *See also* Cal. Gov. Code §9606 ("Persons acting under any statute act in contemplation of [the Legislature's] power of repeal").

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP

40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113

TELEPHONE (408) 995-5600 FAX (408) 995-0308

1   for this rule is that all statutory remedies are pursued with full realization that the legislature

2   may abolish the right to recover at any time.' [Citation.]"[27]  Consequently, the court ruled,

3   since the right of a private plaintiff to sue a defendant for engaging in an unfair business

4   practice stemmed *solely* from the UCL, the amendment of the law should be applied

5   retrospectively.[28]

6       Finally, the *Benson* court ruled, even though Proposition 64 had become effective

7   during the pendency of the appeal, the ballot measure still applied because the plaintiff had

8   not yet converted his cause of action into a final judgment.  "'If final relief has not been

9   granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment

10  has been entered and the cause is pending on appeal.  The reviewing court must dispose of

11  the case under the law in force when its decision is rendered.'"[29]

12      Similarly, in *Branick v. Downey Sav. & Loan Ass'n*, the plaintiff filed a representative

13  suit against the defendant, a savings and loan association, under the UCL.  Plaintiff charged

14  that the defendant had engaged in an unfair business practice by charging unauthorized fees

15  in real estate financing transactions and misrepresenting the amount of government

16  recording fees that had to be paid in order to record documents with the county recorder's

17  office.  The defendant moved for judgment on the pleadings on the ground that the

18  plaintiff's suit was preempted by federal law.  The trial court granted the motion and

19

20  _____

21      [27]  *Benson v. Kwikset Corp.*, *supra*, (Exh. "1"), at p. 13, quoting from *Governing Board of Rialto Unified School Dist. v. Mann*, 18 Cal. 3rd 819, 829 (1977).  The court also pointed out that statutory repeal principle also applies when the statute is only partially repealed.  *Id*. at 13.

23      [28]  *Id*. (Exh. "1").  The court rejected the plaintiff's argument that the statutory repeal principle did not apply since the UCL was simply a codification of the common law tort of unfair competition.  As the court pointed out, the common law tort was limited to situations where the defendant had "passed off" his goods as those of the plaintiff.  "'The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection. . . .  In contrast, statutory 'unfair competition' extends to all unfair and deceptive business practices.  For this reason, the statutory definition of 'unfair competition' 'cannot be equated with the common law definition.'"  *Id*. at 14-15, quoting from *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263, 1264 (1992).

28      [29]  *Id*., (Exh. "1"), quoting from *Southern Service Co., Ltd. v. Los Angeles*, 15 Cal. 2nd 1, 12 (1940).

entered judgment in favor of the defendant. Plaintiff then appealed.[30] Ultimately, the court ruled that Proposition 64 applied retrospectively barring the plaintiff's claim.[31] Significantly, even though *Benson v. Kwikset Corp.* had not yet been decided, the court's analysis tracks anticipates and tracks it almost exactly.[32]

In this case, we expect that Plaintiff will rely on the decision issued by the California First District Court of Appeal in *Californians for Disability Rights v. Mervyn's, LLC.* In that case, the court observed that repeal of a statute applies only prospectively unless the legislative intent clearly indicates that it is to be applied retrospectively. Since Proposition 64 did indicate one way or the other whether it applied retrospectively, the court held, it should be applied only prospectively to cases filed after its effective date.[33]

In rejecting *Californians for Disability Rights v. Mervyn's, LLC*, the Second and Fourth District Courts of Appeal pointed out that the First District Court had failed to properly consider the pertinent statute or the decisions of the California Supreme Court. In particular, they observed, the court had overlooked altogether the legal principle that if an action rests solely on a statutory basis, a repeal of the statute will terminate all pending actions based thereon. Both the Second and Fourth District Courts criticized the First District Court's decision as fundamentally flawed because it failed to address the Supreme

---

[30] As in *Benson v. Kwikset Corp.*, the California electorate approved Proposition 64 while the plaintiff's appeal was pending. The California Second District Court of Appeal then asked the parties to submit supplemental briefs addressing the issue whether the ballot measure applied retrospectively.

[31] *See Branick v. Downey Sav. & Loan Ass'n*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 201 (Feb.. 9, 2005), (Exh. "6").

[32] Similarly, the courts' analyses in both *Bivens v. Corel Corp.*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 256 (Feb. 18, 2005) (Exh. "8") and *Lytwyn v. Fry's Electronics, Inc.*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 267 (Feb. 22, 2005) (Exh. "9") also track closely the analysis of *Benson v. Kwikset Corp.*, but these courts had the advantage of having seen the decision before issuing their decisions.

[33] *See Californians for Disability Rights v. Mervyn's, LLC*, __ Cal. App. 4th __, 2005 Cal. App. LEXIS 160 (Feb. 1, 2005) (Exh. "7").

Court's prior decisions.[34]  The Fourth District also found the decision "particularly troubling" because it would lead to an "absurd" result:

> Application of the prospectivity rule to the facts presented in *Californians for Disability Rights* is particularly troubling. That lawsuit involves an appeal by the plaintiff from a judgment for the defendant in an unfair competition law action. If the Court of Appeal reverses the judgment and remands the matter for further proceedings, the trial court will be faced with the prospect of potentially issuing injunctive or restitutionary relief in favor of a party that lacks the jurisdictional basis to maintain the underlying action. We believe the electorate would consider such a circumstance to be an absurd situation.[35]

In this case, Plaintiff does not allege that he suffered any "injury in fact" or that he lost any "money or property."  Accordingly, since Proposition 64 applies retrospectively, Plaintiff no longer has any standing under the UCL to sue or seek injunctive relief. Moreover, since it is highly doubtful that Plaintiff can amend his complaint truthfully ro allege such facts, the Court must dismiss his second claim for relief.

**B.**  **Plaintiff's request for class certification under Rule 23(b)(2) must be denied.**

Plaintiff seeks class certification under Rule 23(b)(2) of the Federal Rule of Civil Procedure.  Before a class may be certified under Rule 23(b)(2), however, Plaintiff must first establish that Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate *final injunctive relief* or *corresponding declaratory relief* with respect to the class as a whole.[36]  As discussed below, neither "final injunctive relief" nor "corresponding declaratory relief" is appropriate in this case.

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

---

[34]  *See Benson v. Kwikset Corp.*, *supra*, (Exh. "1"), at p. 15; *Branick v. Downey Sav. & Loan Ass'n*, *supra*, Exh. "6," at p. 11.

[35]  *See Benson v. Kwikset Corp.*, *supra*, (Exh. "1"), at pp. 15-16.

[36]  Fed. R. Civ. P. 23(b)(2) (emphasis added).

MCGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

1   Therefore, the Court must dismiss Plaintiff's request for class certification under Rule

2   23(b)(2).[37]

3       In his Second Amended Complaint, Plaintiff seeks statutory damages, attorney's fees,

4   and costs. He also seeks a "declaratory judgment" that Defendants violated the FDCPA.

5   He also seeks a "declaratory judgment" that Defendants violated the UCL. Finally, he seeks

6   an order enjoining Defendants from continuing to violate the UCL. SAC, Prayer, ¶¶ A-D,

7   pp. 14-15.[38]

8       Plaintiff cannot seek injunctive relief under the FDCPA.[39] Therefore, he seeks

9   injunctive relief under the UCL. But, as previously discussed, in the face of Proposition 64,

10  Plaintiff no longer has any standing to seek such relief under the UCL. Consequently, if

11  Plaintiff is to obtain class certification under Rule 23(b)(2), he must establish that

12  "corresponding declaratory relief" is appropriate. As discussed below, Plaintiff cannot

13  establish that such declaratory relief is appropriate.

14      The Advisory Committee's Note to the 1966 Amendment of Rule 23 defines

15  "corresponding declaratory relief" as "referring to any remedy that 'as a practical matter

16  . . . affords injunctive relief or serves as a basis for later injunctive relief.' In other words,

17  the declaration should be equivalent to an injunction."[40] The mere "recitation of a request

18  for declaratory relief cannot transform damages claims into a Rule 23 (b)(2) class action."[41]

19

20

21

---

22  [37] *See Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004) (the
23  plaintiff's failure to carry the burden on any Rule 23 requirement precludes class action).

24  [38] More specifically, Plaintiff alleges that he is "entitled to injunctive relief against
    Defendants (to prevent Defendants from sending these notices in to California) for its unfair,
25  unlawful and fraudulent act or practice as provided by Bus. & prof. Code 17203." SAC, ¶51.

26  [39] *See Gammon v. GC Service L.P.,* 162 F.R.D. 313, 319-20 (N.D. Ill. 1995).

27  [40] 7A Wright, *et al.*, *Federal Practice and Procedure*, §1775, p. 462 (2nd ed. 1986) (footnotes
    omitted).

28  [41] *Bolin v. Sears Roebuck & Co.*, 231 F. 3rd 970, 978 (5th Cir. 2000).

A declaratory judgment must perform the function of an injunction, not merely lay the basis for a damages award.[42]  As Professor Moore states:

> Damages actions may not be disguised as actions for declaratory relief in order to be certified under Rule 23(b)(2) Rule 23(b(2) authorizes certification only for declaratory relief actions in which the declaration "corresponds" with or is the equivalent of injunctive relief. [Citation.] Therefore, courts have held that actions seeking declaratory judgments under Rule 23(b)(2) are improper if the declaration is a declaration of liability that is not designed primarily to control the conduct of the parties, but rather is designed to form a basis for one or more subsequent monetary damage awards.[43]

Class certification under Rule 23(b)(2) is "appropriate *only* where the *primary relief* sought is declaratory or injunctive."[44]  Stated differently, Rule 23(b)(2) does not extend to cases "in which the appropriate final relief relates exclusively or predominately to money damages."[45]  The "dispositive question," therefore, "is what type of relief does [the plaintiff] primarily seek?"[46]

In this case, the primary relief (indeed, the only relief) that Plaintiff seeks is an award of statutory damages and attorney's fees.  Moreover, as one court has pointedly observed, "since the determination of the plaintiff's claim for statutory damages will establish the lawfulness of defendants' actions, it is doubtful whether a declaratory judgment would serve any useful purpose."[47]  "Moreover, and in any event, a declaratory judgment would do

---

[42]   *See* 7A Wright, *et al.*, *Federal Practice and Procedure*, §1775, p. 463 (2nd ed. 1986) ("A declaration that certain conduct constitutes a breach of conduct would not qualify under Rule 23(b)(2) because the effect simply is to lay the basis for a damage award rather than injunctive relief").

[43]   5 Moore, *Moore's Federal Practice*, §23.43[3][d], p. 23-202 (3rd ed. 2004) (footnote omitted).

[44]   *Zinser v. Accufix Research Institute, Inc.*, 253 F. 3rd 1180, 1195 (9th Cir. 2001) (emphasis added).

[45]   Fed. R. Civ. Proc. 23, Advisory Committee's Note to 1966 Amendment.

[46]   *Zinser v. Accufix Research Institute, Inc.*, *supra*, 253 F. 3rd at 1195.

[47]   *Goldberg v. Winston & Morrone, P.C.*, 1997 U.S. Dist. LEXIS 3521 (S.D.N.Y. 1997), p. 8. Coincidentally, the plaintiff in the *Goldberg* case was represented by one of the attorneys for Plaintiff in this case.  Interestingly, in that case, the plaintiff in also sought class certification under Rule

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

MCGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

1    nothing more than provide the basis for an award of future damages if Defendants were to

2    engage in the same practices that had been declared to violate the FDCPA.

3        Equitable relief does not predominate in this case. Consequently, Plaintiff is not

4    entitled to seek class certification under Rule 23(b)(2).[48]

5        **C.  Plaintiff's contention that Defendants created a "false sense of urgency" is without merit.**

6

7    Plaintiff contends that the first four letters that Defendants sent him created a "false

8    sense of urgency." Each of these letters stated:

9        As you know from our first letter, we represent the above names,
         CACV of Colorado, LLC. If you continue to ignore this matter,
10       we may have no option but to recommend to our client that it
         exhaust whatever legal measures are available to collect this debt
11       through local counsel in your state. We regret having to take
         this step but your failure to pay this bill has left us essentially
12       with no other option.

13       Please call our office immediately. The toll free number is
         1-800-577-2230.
14

15       As required by law, you are hereby notified that this firm's client
         may submit a negative credit report reflecting on your credit
16       record to a credit reporting agency if you fail to fulfill the terms
         of your credit obligations.

17   Plaintiff alleges, "on information and belief," that CACV "does not actually report

18   debts [to credit reporting agencies]." SAC, ¶23. Therefore, Plaintiff alleges, "Defendants'

19   use of the terms 'exhaust whatever legal measures are available to collect this debt,' 'no other

20   option,' and 'immediately,' combined with the threat to report the debt, created a

21

22

23

24   23(b)(2) The plaintiff's arguments were rejected by the court as "questionable," "doubtful," and
25   "untenable."

26       [48]  *See Zinser v. Accufix Research Institute, Inc.*, 253 F. 3rd 1180, 1195 (9th Cir. 2001) (monetary
     relief predominates even though plaintiff also seeks medical monitoring). *Cf. Dukes v. Wal-Mart
27   Stores, Inc.*, 222 F.R.D. 137, 170 (N.D. Cal. 2004) (plaintiff primarily motivated to improve
     opportunities for class members and future female employees). *See also Molski v. Gleichc*, 318 F. 3rd
28   937, 947-950 (9th Cir. 2003) (there is no bright line test for certification; courts must determine
     whether monetary or equitable relief predominates on a case-by-case basis).

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

false sense of urgency, and the false impression they were about to report [Plaintiff's] debt." *Id*. As discussed below, Plaintiff's contention is utterly without merit for at several reasons.[49]

First, Defendants' statement that they *might* submit a negative credit created no sense of urgency, as evidenced by the fact that Plaintiff continued to ignore the Cambece firm's subsequent requests that he call. Second, Defendants did *not* state that they *would* submit a negative credit report. They stated only that they *might* do so.

Plaintiff is sure to argue that this distinction is purely one of semantics. However, in *Taylor v. Cavalry Investment, LLC*, the distinction was not purely one of semantics, at least as far as Justice Posner was concerned. In that case, the debt collector sent a letter to the debtor requesting payment on her credit debt.[50] In the letter, the collector stated that "if applicable, your account will accrue interest at a rate specified in your contractual agreement with your original creditor." The debtor then filed a class action suit alleging that the collector had violated the FDCPA by falsely stating that interest would be added to the amount due, when, in fact, such interest was not added. Judge Posner characterized the debtor's argument as "downright frivolous," pointing out that the collector had not said that interest "would" be added, only that it "might" be added.[51]

---

[49]  Certainly, it should be interesting to see, once discovery starts, what possible facts could have given rise to Plaintiff's "information and belief" to support these allegations.

[50]  *See Taylor v. Cavalry Investment, LLC*, 365 F. 3rd 572 (7th Cir. 2004).

[51]  *Id*. at 575.

MCGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

The case of *Riviera v. MAB Collections, Inc.* 174 (W.D.N.Y. 1988) is also instructive.[52/] In that case, in considering whether the debt collector's letter violated the FDCPA, the court, applying unassailable logic, ruled that the letter did not violate the Act:

> Plaintiff contends that an issue of fact exists as to what is meant by 'LEGAL ACTION MAY BE NECESSARY TO COLLECT THIS BIL [SIC].' It is clear to this court that this language is straightforward and no inference can be made which would constitute a triable issue of fact. Even an unsophisticated person would realize this statement to mean that because he has allowed his debt to remain unpaid, a suit may be brought to collect the amount owed.
>
> The final question then is whether [the debt collector's] language violates 15 U.S.C. §1692e(10). I find that [debt collector's] letter of December 11, 1986 contains no false representation or deception because it contains subject matter which, even to an unsophisticated person, would be reasonably predictable. Thus, the defendant has not violated 15 U.S.C. §1692e(10).[53/]

Applying the logic of *Riviera*, the Cambece firm's statement that CACV *might* submit a negative credit report reflecting on Plaintiff's credit record unless he fulfilled the terms of his credit obligations is exactly the same kind of "reasonably predictable" subject matter that even the least sophisticated debtor should expect to see in a letter attempting to collect a debt. As one court has observed, the FDCPA was not intended to shield the debtor "from the embarrassment and inconvenience which are the material consequence of debt collection."[54/]

Finally, the case of *Terran v. Kaplan* is also instructive.[55/] In that case, the debt collector sent a letter that is similar to Defendants' letter. In the letter, the collector told the debtor that the collector *might* "find it necessary to recommend to our client that [it]

---

[52] *Riviera v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D.N.Y. 1988).

[53] *Id*. at 179 (citation omitted).

[54] *Ferguson v. Credit Management Control, Inc.*, 140 F. Supp. 2nd 1293, 1297 (M.D. Fla. 2001).

[55] *Terran v. Kaplan*, 109 F. 3rd 1428 (9th Cir. 1997).

proceed with legal action" unless the debtor "immediately" called the collector. The debtor sued, contending that the collector's statement "overshadowed" and "contradicted" his right to dispute the validity of the debt under Section 1692g.[56] The Ninth Circuit rejected the debtor's contention, stating:

> It is particularly significant that the challenged language in this matter does not require *payment* "immediately." It merely requests a phone call. . . . The request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt. The language simply encourages the debtor to communicate with the debt collection agency.

The federal courts have been very zealous in making sure that a debt collector does not include in his initial collection letter any language that "overshadows" or "contradicts" the debtor's right to dispute the validity of the debt under Section 1692g. Therefore, if the language contained in the collection letter in the *Terran* passed muster of the Court of Appeals, then, certainly, the language contained in Defendants' letters should pass muster of this Court.[57]

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308

---

[56] Section 1692g generally requires a debt collector to notify the debtor in its "initial communication" that the debtor has the right to dispute the validity of the debt and to request that the collector verify that the debt was valid.

[57] Plaintiff also alleges that Defendants' letters, including , apparently, their September 8, 2004 letter , were "false, deceptive, and misleading." SAC, ¶32. In their September 8, 2004 letter, Defendants offered Plaintiff a "monthly payment arrangement," which, they hoped, would "help [him] get back on [his] feet again." Plaintiff fails to allege how an offer of a payment plan can constitute an unfair collection practice, and fails to link specific factual allegations to any purported FDCPA violation.

### 4. <u>CONCLUSION</u>.

Plaintiff does not allege that he suffered any "injury in fact" or that he lost "money or property." Therefore, under Proposition 64, he no longer has standing to sue or seek any injunctive relief under the California Unfair Competition Law. Accordingly, the Court should dismiss his Second Claim for Relief.

Moreover, since Plaintiff no longer has standing to seek injunctive relief under the UCL, he is not entitled to seek class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Finally, Defendants did not create any "false sense of urgency," as Plaintiff alleges. Therefore, the Court should dismiss any claim based on such allegation.

Respectfully submitted:

Dated: February 28, 2005

McGRANE, GREENFIELD,
HANNON & HARRINGTON LLP


By:_____/S/_____
      BRIAN J. HANNON
      Attorneys for Defendants
      J. A. CAMBECE LAW OFFICE, P.C., J. A.
      CAMBECE, and CACV OF COLORADO,
      LLC

McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
40 SOUTH MARKET STREET, SECOND FLOOR, SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 995-5600 FAX (408) 995-0308